IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DONNY RAY WELCH, PRO SE, <br> TDCJ-CID No. 1375713, <br><br> Plaintiff, <br><br> v. <br><br> DR. TIMOTHY REVELL; JANE DOE; <br> DR. DHIRAJLAL PATEL; DR. JULITO UY; <br> DR. BARBARA LEAH; ANGEL WHEELER; <br> SUZZANNE V. TENERIO; TOSHA JAMES; <br> LUVEDIA J. GRAVES; <br> DR. BENJAMIN LEEAH; HERMAN NUSZ; <br> MICHELLE WALLER; DR. NFN WEILAND; <br> DONNA LANDES; JANIE LOMAX; <br> P. WILKINS; DR. NFN DEARMIN; <br> NFN SIMMONS; M. HARGRAVE; <br> ROSA MOORE; NANCY FLOREZ; <br> TERESA SIMANS; <br> ALFREDA D. CARREON; JOHN DOE; <br> JOHN DOE, 2; JANE DOE, 2; <br> JOHN DOE, 3; and JOHN DOE, 4, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § | 2:10-CV-0109 |

## REPORT AND RECOMMENDATION

The claims in this lawsuit were severed and transferred from the United States District Court for the Northern District of Texas, Lubbock Division, to the United States District Court for the Northern District of Texas, Amarillo Division, by Order issued May 13, 2010.

Plaintiff DONNY RAY WELCH, acting pro se and while a prisoner confined in the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against twenty-nine medical care givers, administrators, and TDCJ officers and has been granted permission to proceed in forma

pauperis.

By his August 18, 2010 Amended Complaint, plaintiff claims the defendants displayed deliberate indifference to his serious medical needs by failing or refusing to treat his migraine and cluster migraine headaches, refusing him non-formulary medications that were effective, and by failing to allow him to go immediately to the infirmary upon onset of his headaches.

Plaintiff's request for relief is "Declaratory, Nominal, Punitive, Compensatory and Injunctive." No further specificity is contained in plaintiff's pleadings.

## JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[1], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. 1997e(c)(1). A *Spears* hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991)[2].

The Magistrate Judge has reviewed the facts alleged by plaintiff to determine if his claim presents grounds for dismissal or should proceed to answer by defendants.

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact, *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see* also, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

[2] *Cf*, *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

**SPEARS HEARING**

On December 16, 2010, a hearing was conducted pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Initially, plaintiff stated that, when he was "chained," *i.e.* transported, from the Telford Unit to the Clements Unit, he was not told the night before transport that he was on the chain and was not given sufficient time that morning to pack his legal materials, his I-60's and other materials. Plaintiff then stated he was rushed in packing his legal materials at the Telford Unit and was not able to look through everything to see that he brought the right materials for this lawsuit and stated that he simply "[brought] the wrong stuff."

The Court gave plaintiff a copy of his complaint and a copy of the medical records that had been produced to the Court for purposes of the *Spears* hearing. Plaintiff was instructed that, if during the course of the hearing he felt he had a document he wanted to present but had been unable to bring to the hearing, he could inform the Court during the hearing and state what its contents were.

Plaintiff was sworn and testified that, upon his arrival at the Clements Unit in August of 2007, he was treated for migraine headaches, an injured knee and his mental condition. Plaintiff stated Clements medical personnel tried everything on the formulary list of medications for his migraine headaches, but nothing helped. He complained they would give him nothing stronger than Tylenol and Meloxicam for the pain.

Plaintiff testified that in September of 2009, he was sent to the Montford Unit to see a neurologist, Dr. Lincoln, who diagnosed cluster migraine and migraine headaches, as well as a swollen occipital nerve in the back of his head which caused tension headaches. Dr. Lincoln

prescribed Relpax, which plaintiff told the doctors at the Clements Unit was the only medication that had stopped plaintiff's migraine headaches at inception. She also prescribed a muscle relaxant to keep the tension headaches from aggravating the migraine headaches. Plaintiff stated when he returned to the Clements Unit, he was given a total of twelve Relpax and was refused any more and was totally refused the muscle relaxant. Plaintiff said he saw Dr. Lincoln again at which time she said she could only prescribe the medicine, she couldn't force them to give it to him. Plaintiff says that afterwards all he could get was Ibuprofen and medicines that wouldn't work.

Plaintiff further testified Dr. Leeah told him he might be able to get medicines from the Psych Dept. to help with his headaches, but he was told by the Psych Dept. they couldn't treat his headaches. Plaintiff stated he left the Clements Unit in May 2010, at which time he was transferred to the Telford Unit.

Plaintiff admitted Dr. Lincoln tried to treat plaintiff but stated he was suing her because she said there was nothing more she could do. Plaintiff complained none of the doctors at Clements prescribed Relpax. Nevertheless, plaintiff testified Dr. Paul, a doctor at the Clements Unit, called someone to try to get him the Relpax and he is suing her because she was unsuccessful. Plaintiff claims that for the original 8 months he was at the Clements Unit, Dr. Paul would not refer him to a specialist and said it wasn't necessary, he was just suffering from headaches.

Plaintiff concluded that, after the 12 Relpax ran out, they wouldn't even put him back on medicine for migraine headaches like Midrin, Imitrex, etc.

4

Dr. Leeah and Dr. Williams were sworn[3] as witnesses and testified at the hearing.

Dr. Williams testified she was a medical doctor and medical director at the Montford Unit and was licensed to practice medicine in Texas. She stated she had reviewed plaintiff's medical records and testified that, when plaintiff first complained of headaches, he was given Naprosen, a prescription medication, and it was noted that his intake problem list did not list cluster headaches. Dr. Williams testified plaintiff returned on Aug. 27, 2007, complaining he still had a headache and had not received the Naprosen but had been given Propanolol, a medication prescribed to prevent headaches. Naprosen was reordered and it was ordered KOP (keep on person) to treat both his headaches and joint pain (MR pp 2-3[4]).

On Aug. 29, 2007, plaintiff contacted the Warden to request narcotics for his headaches (MR p4). Dr. Williams testified the use of narcotics for migraines long term is not the standard of care in the prison or in the free world. Further, narcotics are never KOP in prison. Plaintiff's Propanolol and Naproxen were discontinued because they were not working and they were replaced with Atenolol and Pamelor and high dosage Ibuprofen (a prescription dosage). On August 29, plaintiff reported the Pamelor gave him nightmares and that he did not want to take it.

On October 24, 2007 (MR p6), plaintiff complained of cluster headaches and requested Relpax and narcotics. Plaintiff had refused Atenolol, so Atenolol was discontinued and Verapamil was prescribed. On Nov. 16th, plaintiff was seen again and said he thought the Verapamil was working. He reported he had experienced no headaches since being placed on

---

[3]Digital audio recording of the December 16, 2010 hearing at 11:19:14 AM.

[4]MR refers to plaintiff's medical record reviewed in open court at the *Spears* hearing, a copy of which was provided to plaintiff by the Court for his use during the hearing.

Verapamil (MR p7).

In Dec. of 2007, plaintiff was placed in Crisis Management (MR p8). He was then transferred to the Montford Unit after a fight with his cellmate. He returned to the Clements Unit in July of 2008.

On Sept. 9, 2008, plaintiff complained of extreme pain, saying the Verapamil and Ibuprofen were no longer helping (MR p10). Dr. Williams testified it was not unusual for a medication to work for a while and then cease to be effective in treating migraine headaches. On Oct. 8, 2008, plaintiff complained of a headache the week before which had lasted five days (MR p11). Plaintiff was given Tylenol and Ibuprofen and was asked to return to the Clinic in 24 hours if he got worse or got no relief. On October 15, 2008, plaintiff requested Meloxicam for his migraine and was started on Meloxicam. The Ibuprofen was discontinued (MR p24). On Nov. 4, 2008, plaintiff stated the Meloxicam had helped for a while but quit after two hours.

On Nov. 12, 2008, plaintiff stated the Verapamil and Meloxicam were no longer working. He was prescribed Salicylate, prescription strength, KOP.

On Nov. 26, 2008, plaintiff was seen cellside for complaints about his knee and his cluster headaches. On Dec. 3, 2008, plaintiff was seen in the clinic for knee pain and cluster headaches and requested the Meloxicam instead of the Salcylate. He stated his headaches were responding to the Meloxicam and permission to keep the Meloxicam KOP was continued.

Plaintiff was seen for complaints that his medication was not helping his cluster headaches and requested Relpax (MR pp26-27). Dr. Williams noted Triptofan was the same class of medicine as Relpax and was prescribed. Triptofan and Relpax are both non-formulary medications. She stated cost-effectiveness is one consideration in compiling the list of formulary

6

medications but that physicians can go outside the list by submitting a non-formulary request and documenting the formulary medications previously tried. If a non-formulary request by a doctor is refused, that doctor can request it again and may be able to override the refusal.

On March 20, 2009, plaintiff again complained of headaches and that the Naprosen not helping (MR p28). On March 23rd, medical personnel noted they would check on the possibility of getting Relpax. Plaintiff was on Verapamil. (MR p31)

On June 29, 2009, plaintiff's Verapamil was renewed (MR p33).

On July 8, 2009, plaintiff's medications were Verapamil, Salicylate, and Ranitidine (MR p34).

Plaintiff submitted a sick call request on July 20, 2009 that his medications were not working (MR p35).

On July 27, 2009, plaintiff's Doxepin dosage was doubled and was in the same class as Pamelor (MR p36). Plaintiff stated Dr. Uy gave him the Doxepin for his skin rash.

On August 10, 2009, medical personnel noted Salicylate and Doxepin gave suboptimal relief so Tylenol was added (MR p38). On August 11, 2009, Verapamil was renewed.

On October 8, 2009, plaintiff stated only Relpax and Soma, a muscle relaxant, worked and Dr. Uy submitted a consultation request, the request was approved, and the appointment date for the consult was set (MR p41-45).

On December 11, 2009, plaintiff was chained in to the Clements Unit from his visit at Montford with a neurologist for cluster migraine headaches. Intake notes show he had been given a shot in his head, a nerve block injecting steroids and marcane (an anesthetic) directly into the nerve, and was told to return in three months for a shot. (MR p49)

When seen by Dr. Uy on December 15, 2009, plaintiff was on Doxepin and told Dr. Uy that the neurologist had prescribed Relpax and was going to try to get approval for the nonformulary medication. (MR p50)

On December 28, 2009, Dr. Uy reviewed the neurologist notes (MR p52) and requested approval for a nonformulary medication, Relpax, for plaintiff for cluster headache as prescribed by the neurology consultant (MR p51).

On December 28, 2009, Dr. Benjamin Leeah approved the Relpax as prescribed (MR p53).

On December 29, 2009, Shawna Garcia conveyed Ms. Lenz' comment deferring the Relpax, requesting consideration of Imitrex, and offering to approve Sumatriptan (MR p55). Dr. Williams stated Dr. Lenz is the director of the pharmaceutical department. Dr. Williams explained Imitrex and Sumatriptan are forms of Relpax and stated she thought the Imitrex was on the formulary.

Dr. Leeah testified that he did not remember talking with Ms. Lenz but that the Relpax was ultimately approved. Dr. Williams testified it was not unusual for the pharmacy to recommend trying some other medication before going to a nonformulary medication.

On December 31, 2009, Nurse Simmons saw plaintiff cellside and informed him of pharmacy response. She noted plaintiff's response that he had already been given Imitrex and she scheduled a doctor's appointment for a follow-up on plaintiff's medication (MR p56).

On January 13, 2010, plaintiff's chart was reviewed by Dr. Uy and he reordered Relpax (MR p59).

On January 13, 2010, a noted was sent from Ms. Garcia in the pharmacy requesting

8

Dr. Uy to come by the pharmacy to review the proper paperwork to order Relpax. (MR p60).

On January 14, 2010, Relpax was ordered with Dr. Benjamin Leeah's approval (MR p61).

On January 20, 2010, plaintiff was seen by Dr. Uy for cramps and it was noted that he reported the Relpax was controlling his headache. (MR p62).

February 1, 2010, plaintiff was seen and instructed he could have one tablet of Relpax at that time, at onset, and could repeat in two hours if needed (MR p63).

February 5, 2010, plaintiff was seen on request for Narcotics in addition to the Relpax for headaches (MR p65); was examined by a nurse (MR pp66-71), and was offered the choice of acetaminophen or ibuprofen (MR p71) and given a doctor's referral (MR p72).

February 8, 2010, plaintiff was seen by Dr. Uy requesting narcotics to help him with headaches. The policy about narcotics was discussed with plaintiff. It was noted that there was "No indication for now" and further action was deferred (MR p74).

On March 24, 2010, plaintiff was seen by Dr. Uy and prescribed Methocarbamol, a muscle relaxant, along with his Relpax (MR p75)

On April 9, 2010, plaintiff had a neurology consult with Dr. Lincoln. Plaintiff complained that Midrin helped the migraine headache but that "they" don't give it to him. He also complained he was not getting nortriptyline (MR p76).

Dr. Williams testified nortriptyline was the Pamelor which plaintiff had earlier stated he didn't want.

On examination, Dr. Lincoln found tenderness on the frontal sinus and severe occipital neuralgia on the left side. The rest of exam was normal (MR p76). Dr. Lincoln also diagnosed

9

carpel tunnel syndrome in the right hand (MR p77). Dr. Lincoln gave plaintiff an injection of depomedrol, a steroid, and an injection of marcane to the greater occipital nerve. Dr. Lincoln recommended midrin at onset of migraines with one capsule each hour afterwards but not more than 5 per day or 10 per week. She also recommended Zanaflex for muscle tension and a follow-up in 3-4 months (MR p77).

On April 14, 2010, plaintiff was seen by Nurse Practitioner Tenorio-Paul for a follow-up after his off-unit neurology consult. Plaintiff was prescribed Midrin and Zanaflex and given a wrist splint for his carpal tunnel. He was also given a blue card for his Midrin order (MR p80-81).

On April 19, 2010, a pharmacy request from Ms. Lenz was sent requesting that medical consider a formulary muscle relaxant (MR p82).

On April 19, 2010, a prescription was entered by Dr. Uy for plaintiff's Midrin (MR p83).

On April 20, 2010, a pharmacy reply from Ms. Lenz approved the Midrin prescription and deferred the Zanaflex (MR p78). Ms. Lenz made a request that doctors consider a formulary muscle relaxant (MR p79).

On April 20, 2010, the Midrin prescription was processed by pharmacy (MR p84). Dr. Williams testified that, as to the Zanaflex, plaintiff received Robaxin instead (MR p 85).

Plaintiff was asked if he wished to comment on anything and stated the Robaxin was given to him for his back because of a fight with another inmate and he only received it for five days. He said the neurologist had ordered a muscle relaxant permanently and that it was refused by prison medical personnel. He said that for the last two months of his medical records, he was in transit awaiting his transfer off unit and, during that time, his blue card to allow him to go to

10

the infirmary immediately upon onset of a headache was not honored by security personnel. He said Sgt. Carrera said she would get to it when she had time and he never got his midrin.

Plaintiff complained that the pain was so bad he would do anything to stop it and that he needed narcotics to treat the pain once a headache started. Plaintiff said prison doctors had repeatedly given him ineffective treatments which did not prevent the headaches and had failed to effectively treat the pain.

Dr. Leeah further testified that in the interval from the first part of April to the time when the Midrin was approved, Ms. Paul, the Nurse-Practitioner, gave plaintiff a dose of steroids, Deltazone, as well as Robaxine for seven days, and was reasonably treating plaintiff for the new diagnosis of carpal tunnel. He said these were treatments which could also help with the headaches.

Plaintiff concluded by stating that everyone told him "it was about the cost" and that it was cheaper to give him the medications he was given than to give him narcotics. He said it was impossible for him to abuse the narcotics because they check to see the inmates take their pills and that the only time he got his Relpax was for twelve days after he returned from Dr. Lincoln. He said that was about two months before his transfer to the Telford Unit. Though plaintiff acknowledged his records showed the Relpax had been renewed, he stated that, once the pills for the previously mentioned twelve-day period ran out, they would not give it back to him.

When asked, plaintiff agreed he received at least one disciplinary at the Montford Unit for hoarding his psychiatric medications.

THE LAW AND ANALYSIS

The testimony and plaintiff's records reviewed at the hearing show plaintiff arrived at the

11

Clements Unit in August of 2007, where he remained until his December 2007 transfer to the Montford Unit. Plaintiff returned to the Clements Unit in July or August of 2008, where he remained until his May 2010 transfer to the Telford Unit. There is no federal statute of limitations for civil rights actions; therefore, the two-year Texas general personal injury limitations period is applied. *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). Plaintiff filed the instant cause on May 13, 2010. Because of limitations, any claim based on a failure to treat or on treatment received prior to May of 2008 is barred from consideration and fails to state a claim on which relief can be granted, and plaintiff's July or August 2008 return to the Clements Unit must be the beginning point for this Court's consideration.

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under Title 42, United States Codes section 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 291-93, 50 L.Ed.2d 251 (1976). Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994). However, not every claim of inadequate or improper medical treatment is a violation of the Constitution, *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).; nor does a disagreement with a doctor over the method and result of medical treatment require a finding of deliberate indifference. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991). A prisoner's disagreement with prison officials regarding medical treatment is

12

insufficient to establish an unconstitutional denial of medical care. *Norton v. Dimanzana*, 122 F.3d 286, 292 (5th Cir. 1997). "[N]egligent medical care does not constitute a valid section 1983 claim." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Further, medical records showing sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Plaintiff's uncontested medical record, reviewed in detail in open court and set forth above, reflects plaintiff received regular and responsive medical treatment for his serious medical needs. In treating plaintiff's complaints of migraine headaches, various medications were tried, some with success and some without success. Plaintiff is dissatisfied because prison medical personnel did not immediately provide him with the medication and narcotics plaintiff thought he needed and requested, and because they refused to provide him with narcotics, offering other pain medications instead.

The facts presented simply do not state a claim of deliberate indifference to plaintiff WELCH's serious medical needs, and plaintiff's dissatisfaction with the medical care provided for his headaches does not state a claim of constitutional dimension.

As to plaintiff's claim that he was not allowed to go to the infirmary immediately upon onset of his headaches as authorized by his blue pass, the only time plaintiff could recall that this occurred was a single incident during a lockdown following the attack of a guard. He said he understood why security personnel couldn't take him to the infirmary at that time but complained medical personnel wouldn't bring his medicine to him because he had the blue card. The facts alleged by plaintiff about this incident do not show deliberate indifference to his serious medical need by security personnel. Further, plaintiff has alleged no fact which shows

13

any unidentified medical personnel knew he was in need of his medication and ignored that need. Plaintiff has failed to state a claim on which relief can be granted.

While the Court does not in any way diminish the pain an individual may experience as a result of migraine and/or cluster headaches, the testimony and records presented at the Spears hearing show a continued course of treatment by medical professionals. This continual treatment completely negates any claim of possible deliberate indifference.

## CONCLUSION

For the reasons set forth above and pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(a), it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that the Civil Rights Claims filed pursuant to Title 42, United States Code, section 1983, by plaintiff DONNY RAY WELCH be DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

### INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this   20th   day of May 2011.


*[signature]*
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).